UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KAREN HANSEN and BETTE JORAM,<br><br>Plaintiffs,<br><br>v.<br><br>GROUP HEALTH COOPERATIVE,<br><br>Defendant. | CASE NO. C15-1436RAJ<br><br>ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |

## I. INTRODUCTION

This matter comes before the Court upon Plaintiffs' Motion to Remand (Dkt. #11) and defendant Group Health Cooperative's ("GHC"'s) motion to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. #13). The Court finds oral argument unnecessary to resolve these motions. For the reasons discussed herein, the Court DENIES Plaintiffs' Motion to Remand. GHC's motion to dismiss is GRANTED in part and DENIED in part.

## II. BACKGROUND

On August 3, 2015, Plaintiffs, Karen Hansen and Bette Joram, filed a class action complaint against Defendant, Group Health Cooperative ("GHC"), in King County Superior Court. Dkt. #1, Ex. A. Plaintiffs allege that GHC engages in unfair and deceptive practices, in violation of Washington's Consumer Protection Act ("CPA"), through its development and implementation of coverage determination guidelines that limit the ability of Washington State psychotherapists to provide mental health services to GHC plan members. *Id*. at 8-10. According to Plaintiffs, these limitations conflict with Washington's Mental Health Parity Act ("Parity Act"). *See id*. at 4-5. The Parity Act requires all health plans that provide medical and surgical service coverage to also provide coverage for mental health services. RCW 48.44.341. Plaintiffs' complaint does not make a distinction between GHC's administration of ERISA and non-ERISA plans.

Plaintiffs identify three business practices engaged in by GHC that allegedly violate the CPA. First, Plaintiffs contend that GHC's coverage determination guidelines are unfairly and deceptively created. Dkt. #1, Ex. A at 8. According to Plaintiffs, the unfair and deceptive practices engaged in by GHC during the creation of its coverage guidelines have resulted in guideline flaws that enable GHC to limit or deny coverage for mental health services. *Id*. at 8-9. Second, Plaintiffs claim that GHC's use of its unfairly and deceptively created guidelines is also unfair and deceptive. *Id*. at 10-11. Finally, Plaintiffs challenge GHC's hiring of psychotherapists; Plaintiffs claim that GHC uses the employer-employee relationship to make its psychotherapists comply with GHC's unfairly and deceptively created coverage determination guidelines. *Id*. at 11-12.

Plaintiffs contend that GHC's unfair and deceptive coverage criteria creates a level of ambiguity and uncertainty surrounding coverage, and payment, that physical healthcare

providers are not subjected to. *Id*. at 8-9. In turn, this ambiguity and uncertainty allegedly interferes with Plaintiffs' psychotherapist-patient relationships, and with Plaintiffs' ability to use certain psychotherapy treatments. *Id*. at 9-11. Plaintiffs seek class and subclass certification, a declaration that GHC's business practices are unfair and deceptive, a declaration that GHC's subsequent mental health coverage determinations are void, injunctive relief, general damages, punitive damages, and attorney fees and costs. *Id*. at 15-16.

GHC removed Plaintiffs' case to this Court on September 4, 2015. Dkt. #1. GHC asserts that Plaintiffs' claims are completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA") because they could have been brought pursuant to the comprehensive, civil enforcement scheme contained in section 502(a) of ERISA. *Id*. at 1, 6. To support this allegation, GHC presents three claim forms which indicate that Plaintiffs were assigned ERISA-plan benefits under ERISA plans administered by GHC. Dkt. #3, Ex. B. In addition to opposing remand, GHC also seeks to dismiss Plaintiffs' complaint by arguing that Plaintiffs' claims are conflict and expressly preempted under sections 502(a) and 514(a) of ERISA. *See* Dkts. #13 and #20.

Plaintiffs filed their Motion to Remand on October 5, 2015. Dkt. #11. Because they seek to enforce their rights as healthcare providers, Plaintiffs contend that their claims are not completely preempted by ERISA. *Id*. at 5. Plaintiffs disclaim the allegation that their claims are brought to enforce their rights as ERISA plan assignees. *Id*. at 8. Plaintiffs further argue that GHC waived its right to remove this case to federal court when it filed an answer to Plaintiffs' state court complaint *after* filing a notice of removal. *Id*.

# III. LEGAL STANDARD

**A. Motion to Remand**

Civil actions may be removed from state court to federal court if original jurisdiction exists in the federal court at the time the complaint is filed. 28 U.S.C. § 1441(a). The following two bases for federal subject matter jurisdiction exist: (1) federal question jurisdiction under 28 U.S.C. § 1331; and (2) diversity jurisdiction under 28 U.S.C. § 1332. Federal question jurisdiction is proper when civil actions arise under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Diversity jurisdiction is established if a matter is between citizens of different states (or between citizens of a state and citizens of a foreign state), and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1)-(2).

The existence of federal question jurisdiction is typically determined by the "well-pleaded complaint" rule. *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9-10 (1983). Under the "well-pleaded complaint" rule, federal question jurisdiction is proper if a federal question appears on the face of a plaintiff's complaint. *Id*. at 10-11. Defendants cannot remove a case to federal court on the basis of a federal defense "even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Id*. at 14. Exceptions to the well-pleaded complaint rule exist if the state law is completely preempted by federal law, if a claim if necessarily federal in character, or if a right to relief is dependent on the resolution of a substantial, disputed federal question. *Arco Envtl. Remediation L.L.C. v. Dep't of Health & Envtl. Quality*, 213 F.3d 1108, 1114 (9th Cir. 2000).

A strong presumption against removal exists, and the removing defendant bears the burden of establishing that removal is proper. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th

Cir. 1992). If there is any doubt as to the right of removal, federal jurisdiction must be rejected. *Id*. at 566.

**B. Motion to Dismiss[1]**

To survive the contention that a complaint does not state a claim upon which relief can be granted a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility can be established if a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. If it appears "beyond doubt" that a plaintiff cannot prove a set of facts that would entitle her to relief, the plaintiff's claim will be dismissed. *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 782-83 (9th Cir. 1996).

On a motion to dismiss, the Court accepts all allegations of material fact as true, and construes those allegations in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). However, the Court is not required "to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

If a 12(b)(6) motion to dismiss is granted, the Court can grant a party leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). However, the Court need not grant a leave

---

[1] Although GHC's Rule 12(b)(6) motion to dismiss is untimely because it was filed after its answer to Plaintiffs' complaint, GHC is not foreclosed from bringing this motion. Untimely 12(b)(6) motions are treated as motions for judgment on the pleadings. *Aldabe v. Aldabe*, 616 F.2d 1089, 1093 (9th Cir. 1980). The Court will thus treat GHC's rule 12(b)(6) motion as a 12(c) motion for judgment on the pleadings. The standard for demonstrating that a complaint fails to state a claim upon which relief can be granted is the same under both rules. *Id*.; *also Otter v. Northland Grp., Inc.*, No. 12-2034-RSM, 2013 WL 2243874, *1 (W.D. Wash. May 21, 2013) ("A Fed.R.Civ.P. 12(b)(6) motion to dismiss permits a court to dismiss a complaint for failure to state a claim. A Fed.R.Civ.P. 12(c) motion is made after the complaint has been answered, but is treated the same.").

to amend if an amendment is futile; a party's claims may be dismissed with prejudice if an amendment would be futile. *Steckman*, 143 F.3d at 1298.

## IV. ANALYSIS[2]

A narrow exception to the "well-pleaded complaint" rule exists in the context of ERISA. Section 502(a) of ERISA "'confers exclusive federal jurisdiction in certain instances where Congress intended the scope of federal law to be so broad as to entirely replace any state-law claim.'" *Marin Gen. Hosp. v. Modesto & Empire Traction Co.*, 581 F.3d 941, 945 (9th Cir. 2009) (quoting *Fransciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008)). When a cause of action raises a claim encompassed by section 502(a), the claim is "necessarily federal in character." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987). Complete preemption under ERISA thus works to re-characterize state-law claims into federal claims. *Id*. at 64-65.

In *Aetna Health Inc. v. Davila*, the Supreme Court set forth a two-prong test to determine if a state-law cause of action is completely preempted. 542 U.S. 200, 210 (2004). A state-law cause of action is completely preempted if: (1) "an individual, at some point in time, could have brought [the] claim under ERISA[,]" and (2) "where there is no other independent legal duty that is implicated by a defendant's actions." *Id*. Both prongs of this test must be met to completely preempt a state-law cause of action. *Id*.

After it is established that subject matter jurisdiction is proper, the Court must then determine whether Plaintiffs' claims are preempted by ERISA. "There are two strands to

---

[2] As an initial matter, the Court acknowledges that GHC's motion mischaracterizes Plaintiffs' claims. Plaintiffs' complaint raises broad allegations that encompass both ERISA and non-ERISA plans. *See* Dkt. #1, Ex. A. The complaint does not, as GHC alleges, seek reimbursement for services provided to the three ERISA plan members identified in the claims forms submitted by GHC. The Court's consideration of those claims forms in deciding whether it has subject matter jurisdiction is not an affirmation of GHC's interpretation of Plaintiffs' claims.

ERISA's powerful preemptive force." *Cleghorn v. Blue Shield of California*, 408 F.3d 1222, 1225 (9th Cir. 2005). A cause of action can be expressly preempted by section 514(a) of ERISA, or conflict preempted by ERISA section 502(a). *Id*. Both of these provisions defeat state-law causes of action. *E.g.*, *Fossen v. Blue Cross and Blue Shield of Mont., Inc.*, 660 F.3d 1102, 1107 (9th Cir. 2011).

Express preemption under section 514(a) preempts all state laws "insofar as they may now or hereafter relate to any employee benefit plan[.]" 29 U.S.C. § 1144(a). Common law claims "relate to" ERISA plans if they have "a connection with or reference to such a plan." *Oregon Teamster Emp'rs Trust v. Hillsboro Garbage Disposal Inc.*, 800 F.3d 1151, 1155 (9th Cir. 2015) (citing *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172 (9th Cir. 2004)). "Relate to" is used in the broadest sense. *Nielsen v. Unum Life Ins. Co.*, 58 F. Supp. 3d 1152, 1162 (W.D. Wash. 2014). A common law claim has "reference to" an ERISA plan if "'the claim is premised on the existence of an ERISA'" and the existence of the plan "'is essential to the claim's survival.'" *Oregon Teamster*, 800 F.3d at 1155-56 (internal quotes omitted). A "relationship test" is used to determine if a claim has a "connection with" an ERISA plan. *Id*. at 1156. The "relationship test" considers whether a claim "bears on an ERISA-regulated relationship, *e.g.*, the relationship between plan and plan member, between plan and employer, between employer and employee." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1082 (9th Cir. 2009).

If a cause of action is not expressly preempted under section 514(a), it can nonetheless be conflict preempted under section 502(a) if it conflicts with the comprehensive, civil enforcement scheme set out in that section. *Nielsen*, 58 F. Supp. 3d at 1162. Conflict preemption is determined by applying the same two-pronged, complete preemption test established in *Davila*.

*See id.* at 1162-63 (section 502(a) conflict preemption found where the two pronged *Davila* test was met); *also Fossen*, 660 F.3d at 1113 (same).

**A. Subject Matter Jurisdiction**

GHC contends that subject matter jurisdiction is proper because Plaintiffs' claims are completely preempted by ERISA § 502(a)(1)(B). The Court agrees that to the extent that Plaintiffs' claims apply to GHC's administration of ERISA plans, they are, for the most part, completely preempted. However, to the extent that Plaintiffs' claims relate to GHC's administration of non-ERISA plans, they are not completely preempted. The effect of complete preemption on both sets of claims is addressed below.

    i.    <u>Complete Preemption of Plaintiffs' State-Law Claims, As They Apply to GHC's Administration of ERISA Plans, is Warranted.</u>

GHC has demonstrated that complete preemption of Plaintiffs' state-law CPA claims, as they apply to GHC's administration of ERISA plans, is warranted because both prongs of the *Davila* test are met.

    a.  *Davila* First Prong Analysis

Plaintiffs, as assignees of three ERISA plans administered by GHC, could have brought their claims under ERISA § 502(a)(1)(B). A state-law cause of action falls within the scope of ERISA § 502(a)(1)(B) if it seeks a recovery of plan benefits, an enforcement of rights under said plan, or a clarification of the right to future benefits under the plan. 29 U.S.C. § 1132(a)(1)(B). Generally only ERISA plan participants or beneficiaries can bring a § 502(a)(1)(B) claim. *Id.* However, healthcare providers can bring § 502(a)(1)(B) claims if they are assigned benefits by a plan participant or beneficiary. *Misic v. Bldg. Serv. Emps. Health & Welfare Trust*, 789 F.2d 1374, 1377-78 (9th Cir. 1986) ("[U]nder federal law the beneficiaries' claim for reimbursement may be assigned to the health service provider."). Courts can consider evidence not contained in

the pleadings when a motion to remand challenges the court's jurisdictional basis. *Lodi Mem. Hosp. Ass'n v. Tiger Lines, LLC*, No. 2:15-cv-00319-MCE-KJN, 2015 WL 5009093, at *5 (E.D. Cal. Aug. 20, 2015). Here, GHC has presented evidence that Plaintiffs are assignees of ERISA plan benefits for three GHC members. Dkt. #3, Ex. B.

Plaintiffs' claims, although cloaked under the CPA, duplicate claims available under § 502(a)(1)(B)'s comprehensive, civil-enforcement scheme. In *Davila*, the Supreme Court explained that plaintiffs cannot overcome complete preemption by relying on non-ERISA causes of action to claim that they do not seek reimbursement for benefits denied to them. 542 U.S. at 214. ERISA's preemptive scope, the Court explained, cannot be overcome by a plaintiff's relabeling of claims. *Id*. Here, Plaintiffs' state-law CPA claim at its core, seeks a determination with respect to GHC's provision of plan benefits, an enforcement of rights available under GHC's plans, and a clarification of rights to future benefits under GHC's plans.

According to Plaintiffs, GHC's alleged unfair and deceptive practices include the creation and use of coverage determination criteria, and the hiring of psychotherapists that only treat patients according to GHC's unfairly and deceptively created coverage criteria. Dkt. #11 at 7-8. Plaintiffs also allege that GHC has injured their trade or business by limiting or denying authorization for psychotherapy treatments. Dkt. #1, Ex. A. at 8-10. Plaintiffs' claims thus stem from GHC's decision to limit, or deny, mental health services, and are a direct challenge to GHC's coverage determinations. Because ERISA's civil enforcement scheme encompasses this type of challenge, Plaintiffs, as assignees, could have brought this claim under § 502(a).

Plaintiffs argue that they can bring a CPA claim in their capacity as individuals because their trades or practices have been injured as a result of GHC's coverage determination criteria. Dkt. #11 at 11. This argument overlooks the unfair and deceptive practices allegedly engaged in

1  by GHC. Because Plaintiffs' claims duplicate claims available to them under § 502(a)(1)(B),
2  their attempt to bring this claim in their capacity as healthcare providers fails.

3  Plaintiffs' arguments with respect to assignment and the remedies available to them under
4  ERISA are unpersuasive. In response to GHC's evidence of assignment, Plaintiffs argue that the
5  first *Davila* prong is not met because they are bringing their suit independently, not as assignees
6  of ERISA plan participants or beneficiaries. *Id*. at 8-9. While Plaintiffs are correct in arguing
7  that individuals do not lose their ability to bring an individual claim because of the existence of
8  an ERISA assignment, Plaintiffs forget that individuals must nonetheless demonstrate that their
9  individual claims arise from a legal duty that is independent of an ERISA plan. *Davila,* 542 U.S.
10 at 210 (claims not completely preempted if defendant's actions implicate an independent, legal
11 duty); *see Marin*, 581 F.3d at 947-948 (healthcare provider's claims not completely preempted
12 where state-law claims sought recovery of payments not owed pursuant to ERISA); *also Blue*
13 *Cross of Cal. V. Anesthesia Care Assocs. Med. Grp., Inc.*, 187 F.3d 1045, 1052 (9th Cir. 1999)
14 (plaintiffs free to bring state law claims arising out of agreements separate from their assignors'
15 ERISA plans). As explained in the analysis of the second *Davila* prong, GHC has demonstrated
16 that no independent legal duty exists for two of Plaintiffs' CPA claims.

17 Plaintiffs also argue that their CPA claim is not preempted because the remedies
18 available to them under the CPA are not available under ERISA. Dkt. #11 at 9. This line of
19 reasoning was rejected by the Supreme Court in *Davila*. 542 U.S. at 214-15. In *Davila*, the
20 Court explained that a claim cannot evade ERISA's preemptive scope merely because a state
21 cause of action authorizes remedies not available under ERISA. *Id*. However, Plaintiffs may be
22 able to seek remedies under the CPA if the obligations GHC owes them under the CPA arise

23
24

independently of an ERISA plan. *Id*. at 210. Analysis of the second *Davila* prong demonstrates that two of Plaintiffs' claims do not arise independently of ERISA.

Because the facts indicate that Plaintiffs could have raised their claims within the scope of § 502(a)(1)(B), the first *Davila* prong is satisfied.[3]

        b.  *Davila* Second Prong Analysis

GHC argues that it does not owe Plaintiffs an independent legal duty because their potential liability under the CPA exists as a result of their administration of ERISA health plans. Dkt. #16 at 12. Plaintiffs respond by arguing that GHC's ERISA plans, and any benefits owed to GHC's ERISA plan members, "are wholly irrelevant to Plaintiffs' actual claims." Dkt. # 21 at 6. The Court agrees that GHC's liability for two of its alleged CPA violations stems, in part, from GHC's administration of ERISA health plans.

In *Davila* the Supreme Court considered whether causes of action brought pursuant to the Texas Health Care Liability Act ("THCLA") are completely preempted. 542 U.S. at 210-214. The THCLA imposes a duty on managed care entities to "exercise ordinary care when making health care treatment decisions." *Id*. at 212. If they fail to exercise ordinary care, managed care entities are subject to liability for damages proximately caused by their actions. *Id*. The health plan administrators in *Davila* allegedly violated the duty of ordinary care imposed by the THCLA when they refused to approve coverage for the plaintiffs' respective medical ailments. *Id*. at 211. The duty of ordinary care imposed by the THCLA, the plaintiffs argued, arose irrespective of any duty imposed by ERISA or the plaintiffs' health plan terms. *Id*. at 212. The Supreme Court disagreed. *Id*.

---

[3] Plaintiffs unpersuasively argue that they are only interested in GHC's creation and use of coverage criteria with respect to non-ERISA plans. Dkt. # 21 at 6-7. Plaintiffs' complaint does not make a distinction between GHC's administration of ERISA and non-ERISA plans.

In deciding whether the THCLA created an independent, legal duty, the Supreme Court considered the interplay between the duty imposed by the THCLA and the terms of the plaintiffs' benefit plans. *See id*. at 213. The Court explained that determining whether the duty to exercise ordinary care was violated necessarily required an interpretation of the plaintiffs' health plan terms. *Id*. at 213. Interpretation of an individual's health plan was necessary because the THCLA specifically stated that a managed care entity could not be held liable for refusing to deny coverage for treatments not covered by an individual's health plan. *Id*. at 213. The duty to exercise ordinary care could thus only arise if the plaintiffs' health plans provided coverage for the medical treatment sought in the first place. Absent this coverage, liability under the THCLA could not exist. Because a liability determination was dependent on the interpretation and administration of the plaintiffs' health plan benefits, the Supreme Court held that the THCLA did not implicate an independent, legal duty. *Id*. at 213-214.

Under the second prong of *Davila*, the Court must determine whether Plaintiffs' complaint relies on legal duties that arise independent of ERISA or independent of GHC's health plan terms. Plaintiffs allege that GHC engages in unfair and deceptive business practices in direct violation of the CPA. Under the CPA, businesses have a duty to refrain from engaging in unfair or deceptive acts or practices. RCW 19.86.020. Whether imposition of this duty arises independently of ERISA depends on the unfair and deceptive business practice alleged. Plaintiffs' complaint identifies three business practices.

To analyze the second *Davila* prong, the Court must determine if the CPA creates an independent legal duty with respect to each unfair and deceptive act allegedly engaged in by GHC. Each of these alleged unfair and deceptive acts is addressed in turn below.

*1. GHC's Alleged Unfair and Deceptive Development of Coverage Determination Guidelines.*

GHC's duty to refrain from engaging in unfair and deceptive practices when creating its coverage determination guidelines exists independent of GHC's administration of its healthcare plans. According to Plaintiffs' complaint, GHC's development of its coverage determination guidelines is unfair and deceptive because GHC did not choose an independent company to develop its guidelines. Dkt. #1, Ex. A at 8. Plaintiffs allege n that the company chosen to develop the guidelines has an economic incentive to develop guidelines that benefit GHC. *Id*. Determining whether GHC is liable for violating its duty to refrain from this alleged unfair and deceptive business practice does not require the Court to interpret GHC's health plan terms. GHC's liability under the CPA for engaging in this behavior is thus not, like in *Davila*, dependent on a coverage determination. The statutory protection the CPA provides against this alleged unfair or deceptive act or practice applies regardless of whether an ERISA plan exists, and implicates an independent, legal duty that is external to the rights assigned to Plaintiffs.

With respect to Plaintiff's first CPA claim, liability, if any, would stem from GHC's unfair and deceptive use of a non-independent entity to create coverage determination guidelines that limit Plaintiffs' right to provide mental health services. Complete preemption of this alleged, unfair and deceptive business practice is thus not warranted. However, as explained below, subject matter jurisdiction nonetheless exists because Plaintiffs' complaint identifies two unfair and deceptive business practices that do not implicate an independent, legal duty.

*2. GHC's Alleged Use of Unfairly and Deceptively Created Coverage Determination Guidelines.*

GHC's duty to refrain from the alleged, unfair and deceptive act of using its unfairly and deceptively created coverage determination criteria to limit or deny access to mental health services does not implicate an independent legal duty. Two reasons compel this result.

First, whether GHC violates its alleged duty to refrain from using its coverage determination guidelines requires an interpretation of an insured's health plan. Plaintiffs claim that GHC's coverage determination guidelines deny patients access to "medically necessary" care required by Washington State's Parity Act. Dkt. #1, Ex. A at 8-11. However, to determine if GHC's guidelines deny access to "medically necessary" care, a court must interpret GHC's health plan terms. Like in *Davila*, only by interpreting an insured's health plan can a court determine whether coverage for the type of medical service sought exists in the first place. If coverage is not provided in an individual's healthcare plan, GHC cannot be held liable for an alleged violation of its duty to refrain from the unfair and deceptive use of coverage determination guidelines. Additionally, Plaintiffs argue that GHC uses the (alleged) flaws in its coverage determination guidelines to deny or limit access to "medically necessary" mental health services. *Id*. at 8. To determine if the service sought is "medically necessary," a court must necessarily determine how GHC's health plans define that term.

Like the statutory duty in *Davila*, GHC's duty to refrain from unfair and deceptive use of its coverage determination guidelines necessarily arises in conjunction with GHC's administration of plan benefits. When GHC is not engaged in the administration of its plan benefits, it does not use its coverage determination guidelines and the corresponding duty to refrain from this alleged unfair and deceptive act does not arise. The duties created by the CPA, as they relate to GHC's use of its coverage determination guidelines, thus do not arise independently of GHC's health plans and do not implicate an independent legal duty.

      3. *GHC's Alleged Use of Employer-Employee Relationships to Limit or Deny Access to Mental Health Services.*

Aside from GHC's development and use of coverage determination guidelines, Plaintiffs allege that GHC also unfairly and deceptively uses its employer-employee relationships to limit

or deny access to mental health services. Dkt. #1, Ex. A at 11-12. Whether GHC uses its employer-employee relationship in violation of the CPA necessarily requires examining the rights guaranteed by an individual's health plan. Only by examining the rights guaranteed by the plan, can it be determined whether a guaranteed right was denied by a psychotherapist's use of the coverage determination guidelines in dispute. Like in *Davila*, if a patient is not entitled to coverage for certain treatments, a claim against GHC for its alleged misuse of its employer-employee relationships cannot stand. The duties created by the CPA, as they relate to GHC's hiring of psychotherapists and use of its employer-employee relationships, thus do not arise independently of GHC's health plans and do not implicate an independent legal duty.

  ii. <u>Complete Preemption of Plaintiffs' State-Law Claims, As They Apply to GHC's Administration of Non-ERISA Plans, is Not Warranted</u>.

  Because Plaintiffs could not have brought their state-law CPA claims, as they apply to GHC's administration of non-ERISA plans, under section 502(a)(1)(B) of ERISA, those claims are not completely preempted. However, because the Court has subject matter jurisdiction over Plaintiffs' state-law CPA claims as they apply to GHC's administration of ERISA plans, the Court can exercise supplemental jurisdiction over Plaintiffs' entire suit. 28 U.S.C. § 1367(a); *also Fossen*, 660 F.3d at 1115 (subject matter jurisdiction over claims not completely preempted by ERISA proper where plaintiffs' other claims were completely preempted). Plaintiffs' Motion to Remand is accordingly DENIED.

**B. Waiver of Removal Rights**

  GHC did not waive its right to remove this case to federal court by inadvertently filing an answer to Plaintiffs' complaint in King County Superior Court. An inadvertent waiver of the right to removal may occur if a defendant takes state court actions "that are deemed to constitute a submission to its jurisdiction." *Foley v. Allied Interstate, Inc.*, 312 F. Supp. 2d 1279, 1284

1  (C.D. Cal. 2004) (quoting *Chicago Title & Trust Co. v. Whitney Stores, Inc.*, 583 F. Supp. 575, 577 (N.D. Ill. 1984)) . However, "it is well settled that merely filing a responsive pleading does not invoke the state court's jurisdiction so as to constitute a waiver of the right to remove." *Id.* (quoting *Acosta v. Direct Merch. Bank*, 207 F. Supp. 2d 1129, 1131 (S.D. Cal. 2002)). GHC's filing of an answer in state court thus did not invoke King County Superior Court's jurisdiction, and thus no waiver of GHC's right to removal occurred.

**C. ERISA Preemption**

GHC alleges that dismissal of Plaintiffs' claims is proper because Plaintiffs' claims are preempted by ERISA. Dkt. #13 at 5-7. Because Plaintiffs' state-law claims do not distinguish between GHC's administration of ERISA and non-ERISA plans, the Court addresses the propriety of ERISA preemption for each in turn.

i. <u>ERISA Plan Claims</u>[4]

Two of Plaintiff's state-law CPA claims, as they apply to GHC's administration of ERISA plans, warrant dismissal because they are conflict preempted by ERISA. As explained in section **IV.A.i.**, two of Plaintiffs' state-law CPA claims are completely preempted by ERISA. Those state-law CPA claims seek damages for GHC's alleged unfair and deceptive use of coverage determination criteria. As previously explained, those state-law CPA claims could have been brought pursuant to ERISA's comprehensive, civil enforcement scheme. Because those two claims (as applied to ERISA plans) are completely preempted, the Court agrees that they fail to state a claim for which relief can be granted.

---

[4] In their reply, Plaintiffs argue that the Court should not consider the language contained in GHC's ERISA plans in deciding GHC's Motion to Dismiss. Dkt. #18 at 10-11. Because the Court did not consider the language contained within GHC's ERISA plans when deciding GHC's Motion to Dismiss, there is no need to decide whether to strike GHC's reference to definitions contained within GHC's ERISA plans.

1    While only two of Plaintiffs' state-law CPA claims are completely, and thus also conflict,
2    preempted, all three of the CPA violations alleged in Plaintiffs' complaint are expressly
3    preempted. GHC has demonstrated that Plaintiffs' state-law CPA claims "relate to" ERISA
4    plans because Plaintiffs' state-law claims are based on GHC's alleged, improper denial of GHC
5    plan member requests for authorization of mental health services. *See* Dkt. #1, Ex. A. at 8-10.
6    This limitation on GHC plan members in turn, according to Plaintiffs, limits or denies Plaintiffs
7    of the ability to practice their trade as psychotherapists. *Id*. at 8-11. Because a patient's access
8    to mental health services is determined by their health plan, it follows that the existence of an
9    ERISA plan is essential for Plaintiffs' state-law CPA claims (as those claims apply to ERISA
10   plans). Plaintiffs' state-law claims thus "reference" ERISA plans.

11    In addition to referencing ERISA plans, Plaintiffs' claims also have a "connection with"
12   ERISA plans because those claims bear on ERISA-regulated relationships. The relationship
13   between GHC's ERISA plans and the members covered by those plans will be directly affected
14   by adjudication of Plaintiffs' state-law CPA claims. Because all three of Plaintiffs' state-law
15   CPA claims (as applied to ERISA plans) are expressly preempted, the Court Agrees that they fail
16   to state a claim for which relief can be granted. The Court thus GRANTS GHC's motion to
17   dismiss Plaintiffs' CPA claims as they apply to GHC's administration of ERISA plans.

18        ii.    Non-ERISA Plan Claims

19    Plaintiffs' claims, as they apply to GHC's administration of non-ERISA plans, are not
20   conflict or expressly preempted. To be preempted by ERISA, Plaintiffs' claims must relate to an
21   ERISA plan, or conflict with ERISA's civil enforcement scheme. *Cleghorn*, 408 F.3d at 1225.
22   To the extent that Plaintiffs' complaint alleges that GHC's administration of non-ERISA plans

23

24

violates the CPA, those state-law claims are not preempted.[5] The Court thus DENIES GHC's motion to dismiss Plaintiffs' CPA claims as those claims apply to GHC's administration of non-ERISA plans.

**D. Supplemental Jurisdiction**

Because the Court has dismissed all of the claims over which it had original jurisdiction, the Court can decline to continue exercising supplemental jurisdiction over Plaintiffs' remaining state-law CPA claims. 28 U.S.C. § 1367(c); *also Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) ("[A] federal district court with power to hear state law claims has discretion to keep, or decline to keep, [state law claims] under the conditions set out in § 1367(c)[.]").

GHC should be given an opportunity to show cause why this Court should continue to retain supplemental jurisdiction over Plaintiffs' remaining state-law claims. The Court thus orders GHC to **show cause in writing within seven (7) days** of the date of this Order why the Court should continue to exercise supplemental jurisdiction over Plaintiffs' remaining state-law CPA claims. GHC's brief shall not exceed five (5) pages. Plaintiffs may file a response to GHC's brief within seven (7) days of that brief's date of filing. Plaintiffs' response shall not exceed five (5) pages.

---

[5] For the first time, in their reply in support of their motion to dismiss, GHC argues that Plaintiffs do not have Article III standing to raise CPA claims with respect to GHC's administration of non-ERISA plans. *See* Dkt. #20 at 10. The Court will not address this argument at this time because it was not raised in GHC's Motion to Dismiss. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

# V. CONCLUSION

The Court, having reviewed Plaintiffs' Motion to Remand, Defendant's Motion to Dismiss, the corresponding responses and replies, the declarations and exhibits attached to each motion, and the remainder of the record, hereby finds and ORDERS:

(1) Plaintiffs' Motion to Remand (Dkt. #11) is DENIED.

(2) Defendant's Motion to Dismiss (Dkt. #13) is GRANTED in part and DENIED in part.

(3) GHC is ordered to **show cause in writing within seven (7) days** of this Order why the Court should continue to exercise supplemental jurisdiction over Plaintiffs' remaining state-law CPA claims. GHC's brief shall not exceed five (5) pages. Plaintiffs may file a response to GHC's brief within seven (7) days of that brief's filing. Plaintiffs' response shall not exceed five (5) pages.

(4) The Clerk of the Court is directed to forward a copy of this Order to all counsel of record.

DATED this 19th day of May, 2016.

*/s/ Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge